Beth E. Terrell
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, OSB #100389
Email: jmurray@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PAUL ENOS and DAVID FREITAS, individually and as representatives of a Class of Participants and Beneficiaries on Behalf of the Adidas Group 401(k) Savings and Retirement Plan,<br><br>Plaintiffs,<br><br>v.<br><br>ADIDAS AMERICA, INC.,<br><br>Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2)**<br><br>DEMAND FOR JURY TRIAL |

NOW COME Plaintiffs Paul Enos and David Freitas, individually and as representatives of a Class of Participants and Beneficiaries on Behalf of the Adidas Group 401(k) Savings and Retirement Plan and assert to the best of their knowledge,

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 1

information and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1.      The duties of loyalty and prudence are "the highest known to the law" and require fiduciaries to keep "an eye single to the interests of the [ERISA] participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271-72 n.8 (2nd Cir. 1928).  This duty is incorporated as a matter of law into ERISA through 29 U.S.C. § 1002(21)(A), which provides that an entity is an ERISA fiduciary "with respect to a plan to the extent that [it] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."

2.      Defendant Adidas America, Inc. is an ERISA fiduciary as it exercises discretionary authority or discretionary control over the 401(k) defined contribution plan – known as the Adidas Group 401(k) Savings and Retirement Plan– that it sponsors and provides to its employees.  *For every year between 2013 and 2017 (financial information for 2018 is not yet available), the administrative fees charged to Plan participants for is greater than a minimum of approximately 75  percent of its comparator fees when fees are calculated as cost per participant. And for every year between 2013 and 2017 but two (financial information for 2018 is not yet available), the administrative fees charged to Plan participants is greater than 80 percent of its comparator fees when fees are calculated as a percent of total assets.*

3.      These excessive fees cannot be justified. The high fees, occurring over years, represent something more than a sloppy business practice; they are a breach of the fiduciary duties owed by Adidas to Plan participants and beneficiaries.  Prudent fiduciaries of 401(k) plans continuously monitor administrative fees against applicable benchmarks and peer groups to identify excessive and unjustifiable fees. To remedy, Plaintiffs bring this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) to enforce Adidas's liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from Adidas's breaches of fiduciary duty.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

5.      Venue is appropriate in this district because Adidas may be found in this judicial district within the meaning of 29 U.S.C. § 1132(e)(2).

6.      In conformity with 29 U.S.C. § 1132(h), Plaintiffs have served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

7.      Plaintiff Paul Enos lives in New Bedford, Massachusetts and, during the Class period, was a participant in the Plan under 29 U.S.C. § 1002(7).

8.      Plaintiff David Freitas lives in Achushnet, Massachusetts and, during the Class period, was a participant in the Plan under 29 U.S.C. § 1002(7).

9.      The named Plaintiffs and all participants in the Plan suffered financial harm as a result of the imprudent or excessive fee options in the Plan because Adidas's

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 3

inclusion of those options deprived participants of the opportunity to grow their retirement savings by investing in prudent options with reasonable fees, which would have been available in the Plan if Adidas had satisfied its fiduciary obligations. All participants continue to be harmed by the ongoing inclusion of these investment options.

10. Adidas America Inc. ("Adidas") is a company with its principal headquarters located at 3449 North Anchor Street, Portland, Oregon. In this Complaint, "Adidas" refers to the named defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain. Adidas is the Plan sponsor of the Adidas Group 401(k) Savings and Retirement Plan.

11. Adidas is a fiduciary with ultimate responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a). In combination, Adidas has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

12. The Plan is a "defined contribution" pension plan, meaning that Adidas's contribution to the payment of Plan costs is guaranteed but the pension benefits are not. Adidas contributes 51% of the costs; participants contribute the remainder. Of all of the eligible Plan participants, 27% are retired; 18% are eligible without a 401(k) balance; and 55% are active with a 401(k) balance. There are three service providers that provide recordkeeping and information (among other things) to the Plan: KPMG, Charles Schwab and UBS.

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 4

13.    The Plan is a defined contribution, individual account employee pension benefit plan under 29 U.S.C. §§ 1002(2)(A) and 1002(34). The Plan is established and maintained under a written document in accord with 29 U.S.C. § 1102(a)(1). The Plan provides for retirement income for eligible Adidas employees and their beneficiaries.

## ERISA's FIDUCIARY STANDARDS

14.    ERISA imposes strict fiduciary standards of duty and loyalty and prudence on Adidas as a fiduciary to the Plan. 29 U.S.C. § 1104(a)(1) provides in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan; [and]
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

15.    With certain exceptions not relevant here, 29 U.S.C. § 1103(c)(1) provides in relevant part:

> the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

16.    29 U.S.C. § 1109 provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any

profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

17.    Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and for the exclusive benefit of participants in the plan, and not for the benefit of third parties including service providers to the plan such as recordkeepers and those who provide investment products. Fiduciaries must ensure that the amount of fees paid to those service providers is no more than reasonable. DOL Adv. Op. 97-15A; DOL Adv. Op. 97-16A; *see also* 29 U.S.C. §1103(c)(1) (plan assets "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan").

18.    "[T]he duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996); *Katsaros v. Cody*, 744 F.2d 270, 279 (2nd Cir. 1984) (fiduciaries must use "the appropriate methods to investigate the merits" of plan investments). Fiduciaries must "initially determine, and continue to monitor, the prudence of each investment option available to plan participants." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007); (emphasis original); *see also* 29 C.F.R. § 2550.404a-1; DOL Adv. Opinion 98-04A; DOL Adv. Opinion 88-16A. Thus, a defined contribution plan fiduciary cannot "insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio

and then shifting to the participants the responsibility for choosing among them."

*Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009). Fiduciaries have "a continuing

duty to monitor investments and remove imprudent ones[.]" *Tibble v. Edison Int'l*, 135 S.

Ct. 1823, 1828-29 (2015).

19.     29 U.S.C. § 1132(a)(2) authorizes plan participants to bring a civil action

for appropriate relief under 29 U.S.C. § 1109.

## THE PLAN

20.     There are commercially available programs commonly used by financial

advisors and plan fiduciaries to analyze plans' performance, comparative costs and so

on. The programs require validated information (financial information submitted to the

federal government is often incomplete or contains errors). The program used for the

analysis below contains validated financial information from more than 55,000 financial

plans of all types. The benchmarking analysis below is of the type often employed by

fiduciaries and financial advisors to determine the productivity and efficiency of

financial programs and is appropriately used here.

21.     The following are tabular depictions of the Adidas Plan's fees calculated

as cost per 401(k) plan participant/beneficiary *and* as a percentage of the total Plan's

assets when compared to a representative group of plans with a participant count from

5,000 to 9,999 and plans with a total value of plan assets greater than $500 million (the

figures relating to the Adidas Plan are highlighted in yellow and the average figures of

the comparator plans between 2013 and 2017 are highlighted in green):

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 7

**Adidas Plan Benchmarked Against Other Comparator Plans
With Participant Count Range of Between 5,000 and 9,999 As Fee Cost Per
Participant And Percentage Of Total Plan Assets**

### 2017 – 37 Plans (not including Adidas)

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| Asset Percentage .61% | Asset Percentage .63% | Asset Percentage .45% | Asset Percentage .43% |
| Cost Per Head $513.45 | Cost Per Head $523.06 | Cost Per Head $374.44 | Cost Per Head $357.01 |

### 2016 – 37 Plans (not including Adidas)

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| Asset Percentage .62% | Asset Percentage .63% | Asset Percentage .45% | Asset Percentage .43% |
| Cost Per Head $461.64 | Cost Per Head $468.06 | Cost Per Head $335.07 | Cost Per Head $319.47 |

### 2015 – 37 Plans (not including Adidas)

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| Asset Percentage .70% | Asset Percentage .63% | Asset Percentage .45% | Asset Percentage .43% |
| Cost Per Head $511.77 | Cost Per Head $468.55 | Cost Per Head $335.42 | Cost Per Head $319.80 |

### 2014 – 37 Plans (not including Adidas) with range between 5,000-9,999

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| Asset Percentage .70% | Asset Percentage .63% | Asset Percentage .45% | Asset Percentage .43% |
| Cost Per Head $517.20 | Cost Per Head $465.49 | Cost Per Head $333.23 | Cost Per Head $317.72 |

### 2013 – 37 Plans (not including Adidas) with range between 5,000-9,999

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| Asset Percentage .73% | Asset Percentage .63% | Asset Percentage .45% | Asset Percentage .43% |
| Cost Per Head $529.58 | Cost Per Head $453.65 | Cost Per Head $324.76 | Cost Per Head $309.64 |

**Adidas Plan Benchmarked Against Other Comparator Plans
With Asset Range of Greater than $500 Million As Fee Cost Per Percentage Of
Total Plan Assets**

**2017 – 26 Plans (not including Adidas)**

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** .61% | **Asset Percentage** .63 % | **Asset Percentage** .43% | **Asset Percentage** .44% |

**2016 – 26 Plans (not including Adidas)**

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** .62% | **Asset Percentage** .63% | **Asset Percentage** .43% | **Asset Percentage** .44% |

**2015 – 22 Plans with asset range of $250 million - $500 million (not including Adidas)**

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** .70% | **Asset Percentage** .63% | **Asset Percentage** .45% | **Asset Percentage** .43% |

**2014 – 26 Plans (not including Adidas) with asset range greater than $500 million**

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** .70% | **Asset Percentage** .63% | **Asset Percentage** .43% | **Asset Percentage** .44% |

**2013 – 22 Plans (not including Adidas) with asset range $250 million-$500 million**

| *Adidas* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** .73% | **Asset Percentage** .63% | **Asset Percentage** .45% | **Asset Percentage** .43% |

22.    The total difference from 2013 to 2017 between Adidas's fees and the average of its comparators based on total number of participants is **$6,242,659.**

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 9

23.     The total difference from 2013 to 2017 between Adidas's fees and the average of its comparators based on plan asset size is **$6,078,234.**

24.     Plaintiffs had no knowledge of how the fees charged to and paid by Adidas Plan participants compared to market norms.

25.     The Adidas Plan's fees were also excessive when compared with other comparable mutual funds not offered by the Plan.

26.     The charges that follow are expressed as a percentage of assets under management, or "expense ratio." For example, if the mutual fund deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points (or bps).( One basis point is equal to 1/100th of one percent (or 0.01%).The fees deducted from a mutual fund's assets reduce the value of the shares owned by fund investors.

27.     Here is a comparison of the Plan's individual funds fees compared with other funds that Adidas did not make available to Plaintiffs and other participants:

**PLAN FUNDS COMPARED TO IDENTICAL LOWER COST FUNDS IN 2017**

| Plan Fund | Plan Fee | Identical lower-cost fund | Identical lower-cost fund fee | Plan's Excess (%) |
|---|---|---|---|---|
| T. Rowe Price Retirement Balanced I (TRPTX) | 38 bps | Vanguard LifeStrategy Cnsrv. Gr. Inv. (VSCGX) | 12 bps | 217% |
| T. Rowe Price Retirement I 2005 I (TRPFX) | 40 bps | Fidelity Freedom Index 2005 Inst. Prem. (FFGFX) | 8 bps | 400% |
| T. Rowe Price Retirement I 2010 I (TRPAX) | 39 bps | Fidelity Freedom Index 2010 Inst. Prem. (FFWTX) | 8 bps | 388% |

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 10

| T. Rowe Price Retirement I 2015 I (TRFGX) | 43 bps | Fidelity Freedom Index 2015 Inst. Prem. (FIWFX) | 8 bps | 438% |
|---|---|---|---|---|
| T. Rowe Price Retirement I 2020 I (TRBRX) | 47 bps | Fidelity Freedom Index 2020 Inst. Prem. (FIWTX) | 8 bps | 488% |
| T. Rowe Price Retirement I 2025 I (TRRHX) | 50 bps | Fidelity Freedom Index 2025 Inst. Prem. (FFEDX) | 8 bps | 525% |
| T. Rowe Price Retirement I 2030 I (TRPCX) | 53 bps | Fidelity Freedom Index 2030 Inst. Prem. (FFEGX) | 8 bps | 563% |
| T. Rowe Price Retirement I 2035 I (TRPJX) | 56 bps | Fidelity Freedom Index 2035 Inst. Prem. (FFEZX) | 8 bps | 600% |
| T. Rowe Price Retirement I 2040 I (TRPDX) | 58 bps | Fidelity Freedom Index 2040 Inst. Prem. (FFIZX) | 8 bps | 625% |
| T. Rowe Price Retirement I 2045 I (TRPKX) | 59 bps | Fidelity Freedom Index 2045 Inst. Prem. (FFOLX) | 8 bps | 638% |
| T. Rowe Price Retirement I 2050 I (TRPMX) | 59 bps | Fidelity Freedom Index 2050 Inst. Prem. (FFOPX) | 8 bps | 638% |
| T. Rowe Price Retirement I 2055 I (TRPNX) | 59 bps | Fidelity Freedom Index 2055 Inst. Prem. (FFLDX) | 8 bps | 638% |
| T. Rowe Price Retirement I 2060 I (TRPLX) | 59 bps | Fidelity Freedom Index 2060 Inst. Prem. (FFWTX) | 8 bps | 638% |

| | | | | |
|---|---|---|---|---|
| T. Rowe Price Equity Income I (REIPX) | 55 bps | American Century Income and Growth I (AMGIX) | 46 bps | 20% |
| Vanguard FTSE Social Index I (VFTNX) | 12 bps | Fidelity 500 Index (FXAIX) | 2 bps | 500% |
| Vanguard Institutional Index I (VINIX) | 4 bps | Vanguard Institutional Index Inst. Pl. (VIIIX) | 2 bps | 100% |
| T. Rowe Price Blue Chip Growth (TBCIX) | 57 bps | Morgan Stanley Inst. Growth IS (MGRPX) | 54 bps | 6% |
| T. Rowe Price Small-Cap Stock I (OTIIX) | 75 bps | T. Rowe Price Inst. Small-Cap Stock (TRSSX) | 66 bps | 14% |
| American Funds Europacific Growth R6 (RERGX) | 49 bps | Vanguard International Growth Inv (VWIGX) | 45 bps | 9% |
| Parametric Emerging Markets Instl. (EIEMX) | 112 bps | JP Morgan Emerging Markets Equity L (JMIEX) | 95 bps | 18% |
| Metropolitan West Total Return Bd. Plan (MWTSX) | 37 bps | Bridge Builder Core Plus Bond Fund (BBCPX) | 19 bps | 95% |
| PIMCO Total Return Admin (PTRAX) | 80 bps | Bridge Builder Core Plus Bond Fund (BBCPX) | 19 bps | 321% |

28.    Here is a comparison of how those funds available in the Adidas Plan performed compared with the same funds made available outside the Adidas Plan:

**PLAN FUNDS' PERFORMANCE COMPARED TO THE SAME FUNDS**

| Plan Mutual Fund | 3 Year Return | Identical lower-cost mutual fund | 3 Year Return |
|---|---|---|---|
| T. Rowe Price Retirement Balanced I (TRPTX) | 6.20% | Vanguard LifeStrategy Cnsrv. Gr. Inv. (VSCGX) | 6.12% |
| T. Rowe Price Retirement I 2005 I (TRPFX) | 6.85% | Fidelity Freedom Index 2005 Inst. Prem. (FFGFX) | 6.05% |
| T. Rowe Price Retirement I 2010 I (TRPAX) | 7.46% | Fidelity Freedom Index 2010 Inst. Prem. (FFWTX) | 7.11% |
| T. Rowe Price Retirement I 2015 I (TRFGX) | 8.38% | Fidelity Freedom Index 2015 Inst. Prem. (FIWFX) | 8.18% |
| T. Rowe Price Retirement I 2020 I (TRBRX) | 9.56% | Fidelity Freedom Index 2020 Inst. Prem. (FIWTX) | 8.90% |
| T. Rowe Price Retirement I 2025 I (TRPCX) | 10.57% | Fidelity Freedom Index 2025 Inst. Prem. (FFEDX) | 9.58% |
| T. Rowe Price Retirement I 2030 I (TRPCX) | 11.43% | Fidelity Freedom Index 2030 Inst. Prem. (FFEGX) | 11.20% |
| T. Rowe Price Retirement I 2035 I (TRPJX) | 12.11% | Fidelity Freedom Index 2035 Inst. Prem. (FFEZX) | 12.41% |
| T. Rowe Price Retirement I 2040 I (TRPDX) | 12.72% | Fidelity Freedom Index 2040 Inst. Prem. (FFIZX) | 12.43% |
| T. Rowe Price Retirement I 2045 I (TRPKX) | 12.91% | Fidelity Freedom Index 2045 Inst. Prem. (FFOLX) | 12.44% |
| T. Rowe Price Retirement I 2050 I (TRPMX) | 12.92% | Fidelity Freedom Index 2050 Inst. Prem. (FFOPX) | 12.44% |
| T. Rowe Price Retirement I 2055 I (TRPNX) | 12.90% | Fidelity Freedom Index 2055 Inst. Prem. (FFLDX) | 12.45% |

| | | | |
|---|---|---|---|
| T. Rowe Price Retirement I 2060 I (TRPLX) | 12.89% | Fidelity Freedom Index 2060 Inst. Prem. (FFWTX) | 12.46% |
| T. Rowe Price Equity Income I (REIPX) | 11.35%% | American Century Income and Growth I (AMGIX) | 13.10% |
| Vanguard FTSE Social Index I (VFTNX) | 16.42%% | Fidelity 500 Index (FXAIX) | 14.82% |
| Vanguard Institutional Index I (VINIX) | 14.80% | Vanguard Institutional Index Inst. Pl. (VIIIX) | 14.82% |
| T. Rowe Price Blue Chip Growth I (TBCIX) | 21.81% | Morgan Stanley Inst. Growth IS (MGRPX) | 26.23% |
| T. Rowe Price Small-Cap Stock I (OTIIX) | 16.07% | T. Rowe Price Inst. Small-Cap Stock (TRSSX) | 16.19% |
| American Funds Europacific Growth R6 (RERGX) | 9.94% | Vanguard International Growth Inv (VWIGX) | 15.13% |
| Parametric Emerging Markets Instl. (EIEMX) | 6.61% | JP Morgan Emerging Markets Equity L (JMIEX) | 14.92% |
| Metropolitan West Total Return Bd. Plan (MWTSX) | 2.32% | Bridge Builder Core Plus Bond Fund (BBTBX) | 2.51% |
| PIMCO Total Return Admin (PTRAX) | 2.54% | Bridge Builder Core Plus Bond Fund (BBCPX) | 2.87% |

29.     Finally, here is a comparison of how those funds available in the Adidas Plan before 2017 performed compared with the same funds made available outside the Adidas Plan:

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 14

**OTHER FUNDS IN THE PLAN PRIOR TO 2017**

| Plan Fund | Plan Fee | Identical lower-cost fund | Identical lower-cost fund fee | Plan's Excess (%) |
|---|---|---|---|---|
| T. Rowe Price Equity Income (PRFDX) | 65 bps | Vanguard Value Index Inv. (VIVAX) | 17 bps | 282% |
| T. Rowe Price Blue Chip Growth (TRBCX) | 70 bps | T. Rowe Price Inst. Large Cap Growth (TRLGX) | 56 bps | 25% |
| Vanguard Extended Market Index I (VIEIX) | 6 bps | Fidelity Extended Market Index (FSMAX) | 5 bps | 20% |
| T. Rowe Price Small-Cap Stock (OTCFX) | 89 bps | T. Rowe Price Instl. Small-Cap Stock (TRSSX) | 66 bps | 35% |
| PIMCO Total Return Instl. (PTTRX) | 55 bps | Bridge Builder Core Plus Bond (BBCPX) | 19 bps | 190% |
| PIMCO Total Return Admin (PTRAX) | 80 bps | Bridge Builder Core Plus Bond (BBCPX) | 19 bps | 321% |

| Plan Mutual Fund | 3 Year Return | Identical lower-cost mutual fund | 3 Year Return |
|---|---|---|---|
| T. Rowe Price Equity Income (PRFDX) | 10.70% | Vanguard Value Index Inv. (VIVAX) | 12.52% |
| T. Rowe Price Blue Chip Growth (TRBCX) | 21.35% | T. Rowe Price Inst. Large Cap Growth (TRLGX) | 23.27% |
| Vanguard Extended Market Index I (VIEIX) | 14.12% | Fidelity Extended Market Index (FSMAX) | 13.51% |
| T. Rowe Price Small-Cap Stock (OTCFX) | 15.67% | T. Rowe Price Instl. Small-Cap Stock (TRSSX) | 16.76% |

| PIMCO Total Return Instl. (PTTRX) | 2.64% | Bridge Builder Core Plus Bond (BBCPX) | 2.66% |
|---|---|---|---|
| PIMCO Total Return Admin (PTRAX) | 2.41% | Bridge Builder Core Plus Bond (BBCPX) | 2.66% |

30.     By selecting and retaining the Plan's excessive cost investments while failing to adequately investigate the use of superior lower-cost mutual funds from other fund companies that were readily available to the Plan or foregoing those alternatives without any prudent reason for doing so, Adidas caused Plan participants to lose millions of dollars of their retirement savings through excessive fees.

<u>THE OVERCHARGES BREACHED</u>
<u>DEFENDANT'S FIDUCIARY OBLIGATIONS TO THE PLAN</u>

31.     The administrative fees of the investment offerings were paid for by the Plan participants. Adidas, as a fiduciary, was responsible for ensuring that these administrative fees were reasonable.

32.     A plan's fiduciaries have control over defined contribution plan expenses. The fiduciaries have exclusive control over the menu of investment options to which participants may direct the assets in their accounts. Those selections each have their own fees, which are deducted from the returns that participants receive on their investments.

33.     At retirement, employees' benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses. Accordingly, excessive fees can impair the value of a participant's account. Over time, even small differences in fees and

performance can result in vast differences in the amount of savings available at retirement.

34.     Prudent fiduciaries exercising control over administration of a plan and the selection and monitoring of designated investment alternatives will minimize plan expenses by hiring low-cost service providers and by curating a menu of low-cost investment options. *See* Restatement (Third) of Trusts § 90 cmt. b ("[C]ost-conscious management is fundamental to prudence in the investment function. . . .").

35.     The Supreme Court has noted that the legal construction of an ERISA fiduciary's duties is "derived from the common law of trusts." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). Therefore, "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Id.* In fact, the duty of prudence imposed under 29 U.S.C. § 1104(a)(1)(B) is a codification of the common law prudent investor rule found in trust law. *Buccino v. Continental Assur. Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983).

36.     Given the significant variation in total plan fees attributable to plan size, the reasonableness of administrative expenses and investment management expenses should be determined by comparison to other similarly-sized plans. *See* 29 U.S.C. § 1104(a)(1)(B) (requiring ERISA fiduciaries to discharge their duties in the manner "that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character").

37.     A fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants. A plan fiduciary

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 17

cannot assume that an investment that began as a prudent one will remain so, particularly when the original circumstances change or the investment reveals itself to be deficient. An ERISA fiduciary's investment decisions also must account for changed circumstances and a trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.

38.    As illustrated above, the Adidas's Plan's administrative fees are the highest among its comparator peers consistently, regardless whether the comparison is based on a cost per participant or a percentage of assets.

39.    The funds chosen by Adidas from which Plan participants may elect to invest are "actively managed," which in significant measure results in the higher administrative fees. Adidas could have chosen passively managed funds to offer even as an alternative to Plan participants. These passively managed funds would have resulted in significantly lower administrative fees yet generated comparable returns.

40.    As understood in the investment community, passively managed investment options should either be used or, at a minimum, thoroughly analyzed and considered in efficient markets such as large capitalization U.S. stocks. This is because it is difficult and either unheard of, or extremely unlikely, to find actively managed mutual funds that outperform a passive index, net of fees, particularly on a consistent basis.

41.    Nobel Prize winners in economics have concluded that virtually no investment manager consistently beats the market over time after fees are considered. "Properly measured, the average actively managed dollar must underperform the

average passively managed dollar, net of costs." William F. Sharpe, The Arithmetic of Active Management, 47 FIN. ANALYSTS J. 7, 8 (Jan./Feb. 1991); Eugene F. Fama & Kenneth R. French, Luck Versus Skill in the Cross- Section of Mutual Fund Returns, 65 J. FIN. 1915, 1915 (2010) ("After costs . . . in terms of net returns to investors, active investment must be a negative sum game.").

42.     To the extent fund managers show any sustainable ability to beat the market, the outperformance is nearly always dwarfed by mutual fund expenses. Fama & French, Luck Versus Skill in the Cross-Section of Mutual Fund Returns, at 1931–34; *see also* Russ Wermers, Mutual Fund Performance: An Empirical Decomposition into Stock-Picking Talent, Style, Transaction Costs, and Expenses, 55 J. FIN. 1655, 1690 (2000) ("on a net-return level, the funds underperform broad market indexes by one percent per year").

43.     Accordingly, investment fees are of paramount importance to prudent investment selection, and a prudent investor will not select higher-cost actively managed funds unless there has been a documented process leading to the realistic conclusion that the fund is likely to be that extremely rare exception, if one even exists, that will outperform its benchmark over time, net of investment expenses.

44.     Prudent fiduciaries of large defined contribution plans must conduct an analysis to determine whether actively managed funds, particularly large cap, will outperform their benchmark net of fees. Prudent fiduciaries then make a reasoned decision as to whether it is in participants' best interest to offer an actively managed

large cap option for the particular investment style and asset class, in light of the higher fees of active management.

45.     Prudent fiduciaries of defined contribution plans continuously monitor the investment performance of plan options against applicable benchmarks and peer groups to identify underperforming investments. Based on this process, prudent fiduciaries replace those imprudent investments with better-performing and reasonably priced options.

46.     Adidas's decision-making, monitoring and soliciting bids from investment funds was deficient in that it resulted in almost no passively-managed funds options for Plan participants, resulting in inappropriately high administrative Plan fees.

## CLASS ACTION ALLEGATIONS

47.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

48.     In acting in this representative capacity, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> *All participants and beneficiaries of the Adidas Group 401(k) Savings and Retirement Plan from July 1, 2013 through the date of judgment, excluding the Defendant or any participant who is a fiduciary to the Plan.*

49.     The Class includes more than 7,478 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 20

50.    There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Adidas owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions and omissions alleged as the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

- Who are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether the fiduciaries of the Plan breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Adidas's breach of duty.

51.    Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Adidas's misconduct.

52.    Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they participated in the Plan during the Class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

53.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that

CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) - 21

would establish incompatible standards of conduct for defendant concerning its discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a) and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or (3) would substantially impair those participants' and beneficiaries' ability to protect their interests.

54.     Certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Adidas has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

55.     A class action is the superior method for fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Federal Rule of Civil Procedure 23(b)(3), if it is not certified under Federal Rule of Civil Procedure 23(b)(1).

56.    Plaintiffs' attorneys are experienced in complex commercial and class

litigation and will adequately represent the Class.

## LEGAL CLAIMS
### Count 1 – Breach of Duties of Loyalty and Prudence
### 29 U.S.C. § 1104(a)(1)(A)–(B), (D)

57.    Plaintiffs restate the above allegations as if fully set forth.

58.    Adidas is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21) and/or

1102(a)(1). Adidas is responsible for selecting prudent investment options, ensuring that

those options charge only reasonable fees, and taking any other necessary steps to

ensure that the Plan's assets are invested prudently. Adidas had a continuing duty to

evaluate and monitor the Plan's investments on an ongoing basis and to "remove

imprudent ones" regardless of how long a fund has been in the plan. *Tibble v. Edison,*

135 S. Ct. 1823, 1829 (2015).

59.    29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon

Adidas in its administration of the Plan. The scope of the fiduciary duties and

responsibilities of Adidas includes managing the assets of the Plan for the sole and

exclusive benefit of Plan participants and beneficiaries, defraying reasonable expenses

of administering the Plan, and acting with the care, skill, diligence, and prudence

required by ERISA. These duties further required Adidas to independently assess

whether each option was a prudent choice for the Plan.  *DiFelice v. U.S. Airways, Inc.,*

497 F.3d 410, 423 (4th Cir. 2007); *see Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 590, 595–

96 (8th Cir. 2009).

60.     Adidas was directly responsible for ensuring that the Plan's fees were reasonable, selecting investment options in a prudent fashion in the best interest of Plan participants, prudently evaluating and monitoring the Plan's investments on an ongoing basis and eliminating funds that did not serve the best interest of Plan participants, and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

61.     Adidas failed to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's investments and fees in comparison to other investment options. Adidas selected and retained for years as Plan investment options mutual funds with high expenses relative to other investment options that were readily available to the Plan at all relevant times.

62.     Adidas failed to engage in a prudent process for monitoring the Plan's investments and removing imprudent ones within a reasonable period. This resulted in the Plan continuing to offer excessively expensive funds compared to equivalent and/or comparable low-cost alternatives that were available to the Plan.

63.     Thus, Adidas failed to make Plan investment decisions based solely on the merits of each investment and in the best interest of Plan participants; failed to ensure the Plan was invested in the lowest-cost investment vehicles. Through these actions and omissions, Adidas failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable

expenses of administering the Plan, in violation of its fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

64.    Adidas failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

65.    Adidas is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the breaches, to restore to the Plan any profits Adidas made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Adidas is subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of the Plan and all similarly situated participants and beneficiaries of the Plan, request the following:

- A declaration that Adidas breached its fiduciary duties as described above;

- An order that requires Adidas to make good to the Plan all losses resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- Order an accounting to determine the amounts that Adidas must make good to the Plan;

- Remove the fiduciaries who have breached their fiduciary duties;

- Certify the Class, appointing each of the named Plaintiffs as a class representative and appoint undersigned counsel as Class Counsel;

- Awarding to Plaintiffs and the Class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

- Award interest to the extent it is allowed by law; and

- Grant all other equitable and/or remedial relief the Court deems appropriate.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 10th day of July, 2019.

TERRELL MARSHALL LAW GROUP PLLC


By:  /s/ Jennifer Rust Murray, OSB #100389
    Beth E. Terrell*
    Email: bterrell@terrellmarshall.com
    Jennifer Rust Murray, OSB #100389
    Email: jmurray@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Greg F. Coleman*
    Email: greg@gregcolemanlaw.com
    GREG COLEMAN LAW
    800 South Gay Street, Suite 1100
    Knoxville, Tennessee 37929
    Telephone: (865) 247-0080
    Facsimile: (865) 522-0049

Jordan Lewis*
Email: jordan@jml-lawfirm.com
JORDAN LEWIS, P.A.
4473 NE 11th Avenue
Fort Lauderdale, Florida 33334
Telephone: (954) 616-8995
Facsimile: (954) 206-0374

* *Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs*